UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-00993 AG (JCGx) | Date | March 26, 2018 |
| Title | MICHAEL POLSKY v. VINOD RAMNANI ET AL. | | |

| | | |
|---|---|---|
| Present: The Honorable | ANDREW J. GUILFORD | |
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |

**Proceedings: [IN CHAMBERS] ORDER DENYING MOTION TO TRANSFER, GRANTING MOTION TO DISMISS**

This is a dispute concerning whether Defendants Vinod Ramnani, Thomas Dietiker, Nishita Patel, and Jayesh Patel upheld their corporate duties in their positions at Cardiac Science Corporation, a company that sold cardiology devices. Cardiac is in chapter 11 bankruptcy, and the litigation trustee of Cardiac's bankruptcy estate, Michael Polsky, filed this lawsuit. Defendants move to transfer this case to the Wisconsin Bankruptcy Court and to dismiss Plaintiff's claims.

The Court DENIES Defendants' motion to transfer. (Dkt. No. 39.) The Court GRANTS Defendants' motion to dismiss with leave to amend. (Dkt. No. 38.)

## 1. BRIEF BACKGROUND

The following facts come from the first amended complaint. Defendants held the following positions within Cardiac at various times: Ramnani was a "member of the board of directors" and CEO, Dietiker was a "member of the board of directors" and COO, Jayesh Patel was a "director", and Nishita Patel was "Vice President and General Counsel." (Am. Compl., Dkt. No. 28 at ¶¶ 5–8.) Basically, the amended complaint alleges that Defendants breached their duties of loyalty and care to Cardiac by improperly transferring millions out of Cardiac into other related companies, by granting themselves unjustified "golden parachutes"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-00993 AG (JCGx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | MICHAEL POLSKY v. VINOD RAMNANI ET AL. | | |

though Cardiac, and by using Cardiac funds for personal expenses. (*Id.* at ¶ 1.)

Here are the specifics. The fiduciary duty claim is set against the backdrop of Cardiac's financial troubles. According to Plaintiff, Defendants Ramnani, Dietiker, and Jayesh Patel were also employed by Opto Circuits (India) Limited, the company that owned Cardiac. (*Id.* at ¶¶ 16–17.) Shortly after Opto acquired Cardiac, Cardiac racked up debts it couldn't pay. (*Id.* at 38.) Between November 2010 and September 2011, Cardiac entered into various loan agreements with three different banks. (*Id.* at ¶¶ 25–37.) Cardiac defaulted on these loans and became insolvent. (*Id.* at ¶¶ 34, 36–38.) Plaintiff says the shortage of money and poor managerial decisions caused significant harm to Cardiac's day-to-day business. (*Id.* at ¶¶ 40–43.)

Plaintiff lays blame for the insolvency, at least in part, on Opto and Defendants. (*Id.* at ¶¶ 38–39.) The amended complaint says Defendants "caused Cardiac Science to make numerous transfers to or for the benefit of Opto for inadequate consideration, or for other reasons not in the best interest of Cardiac Science." (*Id.* at ¶ 53.) The amended complaint also says Defendants "caused Cardiac Science to make sizeable transfers to . . . Opto [and Cardiac] Affiliates for inadequate consideration." (*Id.* at ¶¶ 58, 63.) In detailing some of the allegedly inappropriate payments, Plaintiff only occasionally references the specific role played by each Defendant. (*See Id.* at ¶ 53–64.) Otherwise, the amended complaint does not distinguish among the Defendants.

Plaintiff also says that Defendants approved a change in control resolution and change in control agreements (and back dated them) to ensure that a Cardiac lender wouldn't vote out Cardiac's board members. (*See id.* at 70–83.) The agreement, apparently drafted by Nishita Patel, obligated the company to pay Ramnani, Dietiker, and Jayesh Patel over $10 million each upon a qualifying change in control of Cardiac's board. (*Id.* at 74–83.)

Defendants were also all parties to restricted stock agreements that granted them the right to restricted stock if Cardiac ever went public. (*Id.* at 85.) The agreements provided that Ramani, Dietiker, and Jayesh Patel would receive over $7 million upon a qualifying change in control, and that Nishita Patel would receive over $1 million. (*Id.* at 86.) Nishita Patel also received $159,996 in bonus payments from January 2015 through June 2015, which was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-00993 AG (JCGx) | Date | March 26, 2018 |
| Title | MICHAEL POLSKY v. VINOD RAMNANI ET AL. | | |

more than she was payed in base salary. (*Id.* at 91.) Plaintiff contends that all these agreements and payments were unnecessary. (*Id.* at 87, 90–91.)

Plaintiff also alleges that Defendants "caused Cardiac Science to pay excessive fringe benefits and expenses for the benefit of themselves and non-employees" including car leases, hotel costs, vacation expenses, and airfare charges. (*Id.* at 93–94.)

## 2. JUDICIAL NOTICE

Both sides ask the Court to take judicial notice of hundreds of pages of documents. (Dkt. Nos. 40, 43, 47.) Neither party objected to the other's request. All the documents the parties submitted are court filings, transcripts, and orders. Under Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts may take judicial notice of "undisputed matters of public record." *See Lee v. City of L.A.*, 250 F.3d 668, 690. The parties often rely on the proposed documents as legal rather than factual support. *See* Fed. R. Evid. 201(a) ("This Rule governs judicial notice of an *adjudicative* fact only, not a legislative fact."). Setting aside whether judicial notice is appropriate and noting each party's lack of objection to the other's documents, the Court considers the documents.

## 3. MOTION TO TRANSFER

Defendants argue that this case should be transferred to the Wisconsin Bankruptcy Court, primarily because of a liquidation plan previously entered by the Bankruptcy Court. Because the liquidation plan contemplates that claim subordination issues would be resolved in the Bankruptcy Court, Defendants say Plaintiff's fiduciary duty claim must be resolved there, as well. For various reasons, Defendants' arguments for transfer aren't convincing.

The Bankruptcy Court's liquidation plan includes definitions of various classes of claims against Cardiac's bankruptcy estate. (Dkt. No. 140-1 at 28–31.) One class (Class 5) covers "Former Management Claims" defined as "any claim held by any of the Former Management." (*Id.* at 29.) The plan says, "[Cardiac Science] . . . contend[s] that the Class 5

claims are subordinated . . . to Classes 1, 2, 3, and 4. [Cardiac Science] . . . contend[s] that the Former Management Claims are based on contracts that are unenforceable because, among other reasons, they are the result of collusive behavior among the Former Management, were entered into in breach of their fiduciary duties as officers and directors of the Debtor, and are themselves fraudulent conveyances." (*Id.* at 29–30.)

In a separate section concerning the "Resolution of Certain Issues with Individual Creditors", the plan includes the following language:

> [T]he following shall apply to each of Thomas Dietiker, . . . Jayesh Patel, Nishita Patel, [and] Vinod Ramnani[:] . . . the issues of whether the claims of the Individual Creditors are properly treated as set forth in Class 5 of the Plan and/or should be subordinated to other unsecured claims—whether pursuant to 11 U.S.C. 510(b), 510(c) or otherwise—or capped pursuant to 11 U.S.C. 502(b)(7)—are reserved until after confirmation of the Plan; (b) [Cardiac Science], the OCC and the Litigation Trust fully reserve all of their rights, claims and arguments for subordination and the application of a statutory damages cap (collectively, the "Subordination Claims"); and (c) the Individual Creditors fully reserve all of their rights, defenses and arguments in opposition to such subordination and cap arguments (collectively, the "Subordination Defenses" and, together with the Subordination Claims, the "Subordination Issues").

(*Id.* at 48.)

The plan provides that such Subordination Issues:

> shall be presented for resolution by the filing of a motion, objection, or other pleading in the Bankruptcy Court. Such motion, objection, or pleading shall be filed no sooner than 90 days after the Confirmation Date, but can also be filed contemporaneously with any Causes of Action filed against the Individual Creditors by the Litigation Trustee.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-00993 AG (JCGx) | Date | March 26, 2018 |
| Title | MICHAEL POLSKY v. VINOD RAMNANI ET AL. | | |

(*Id.* at 48.) The plan excludes from "Causes of Action" to be asserted by the litigation trustee "any affirmative defense or cross-claim asserted with respect to a Claim . . . to the extent that it seeks to disallow or reduce, or is offset against, such Claim." (*Id.* at 20.)

The portions of the plan just discussed don't cover Plaintiff's breach of fiduciary duty claim. There is a logical distinction between Subordination Issues that affect payout priority in the bankruptcy proceedings and the standalone fiduciary duty claim pursued by Plaintiff. The liquidation plan appears to rely on this assumption. As mentioned, the plan provides that a motion to resolve Subordination Issues "can . . . be filed contemporaneously with any Causes of Action filed against the Individual Creditors by the Litigation Trustee." (*Id.* at 48.) The plan's definition of "Cause of Action" doesn't exclude Plaintiff's fiduciary duty claim, particularly since the complaint in this Court isn't an "affirmative defense or cross-claim asserted with respect to a Claim," though Plaintiff might later use the result of this case in that context. (*Id.* at 20.) Also, the definition of Subordination Issues includes only "*Subordination* Claims" which include "rights, claims, and arguments *for subordination*." (*Id.* (emphasis added).) Again, while the result of the fiduciary duty claim might come to bear on Subordination Issues in the bankruptcy proceedings, it is not itself a claim or argument for subordination. Though Plaintiff's original complaint included subordination claims, his amended complaint doesn't. (*Compare* Dkt. No. 1 *with* Dkt. No. 28.) As it now stands, the Court and the parties can resolve this entire case without ever touching the subordination question.

Put simply, there's no convincing reason to transfer this case to the Wisconsin Bankruptcy Court. The statutes Defendants cite to justify their transfer request don't appear to authorize transfer of this case directly to a bankruptcy court. *See* 28 U.S.C. § 1404(a) (allowing transfer "to any other district or division"); 28 U.S.C. § 1412 (allowing transfer of "a case or proceeding under title 11 to a district court for another district"). What's more, Defendants haven't made a sufficient showing that justice or convenience would be promoted by the proposed transfer. *See* 28 U.S.C. §§ 1404(a), 1412. And it appears the Wisconsin Bankruptcy Court cannot enter final judgment concerning the fiduciary duty claim because Plaintiff hasn't consented to the Bankruptcy Court resolving that claim. *See Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1939 (2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-00993 AG (JCGx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | MICHAEL POLSKY v. VINOD RAMNANI ET AL. | | |

Defendants haven't met their burden to justify transfer.

## 4. MOTION TO DISMISS

Defendants move to dismiss Plaintiff's complaint for failure to state a claim. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." With that liberal pleading standard, the purpose of a motion under Rule 12(b)(6) is "to test the formal sufficiency of the statement of the claim for relief." 5B C. Wright & A. Miller, Federal Practice and Procedure § 1356, p. 354 (3d ed. 2004). To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In analyzing the complaint's sufficiency, a court must "accept[] all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). But the assumption of truth doesn't apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

### 4.1 Failure to Plead Who Did What

Defendants argue that the amended complaint should be dismissed because it "fails to satisfy the fair notice requirements of Rule 8(a) because it improperly relies upon 'group' or 'collective' pleading against the Defendants." (Mot., Dkt. No. 38 at 4–5.) As this Court has previously pointed out, "[c]ourts in this circuit have held that a complaint fails to state a claim and must be dismissed if it does not indicate which individual defendant or defendants are responsible for which alleged wrongful act." *Ahmadi v. Nationstar Mortgage, LLC*, No. SACV 16-0062 AG (JCGx), 2016 WL 7495826 (C.D. Cal. March 31, 2016) (internal quotation marks, citations, and alterations omitted). At times, that method of pleading might frustrate the Court's ability "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

While Plaintiff spends several pages in his brief attempting to detail which wrongful acts are

attributable to which Defendants, the amended complaint doesn't draw those distinctions. True enough, in some places the amended complaint distinguishes among the various Defendants and their actions, and discovery might clarify this picture a bit. (*See,e.g.*, Am. Compl., Dkt. No. 28 at ¶¶ 53(b), 58(e), 70.) But most of the relevant allegations refer generally to Defendants and how they collectively "caused Cardiac Science" to do things against the company's best interests. (*See, e.g.*, *id.* at ¶¶ 53, 58, 63.) This format is particularly troubling here because the complaint doesn't say that all the Defendants had the authority to make or forbid the allegedly wrongful transfers and corporate changes. Remember, Nishita Patel is alleged to have been a vice president and general counsel, not a board member. (*See id.* at ¶ 7.) It's unclear how she could have breached her corporate duties in the exact same manner as the other Defendants, though her responsibilities and duties are apparently quite different. To make matters worse, the amended complaint doesn't allege that Defendants were all employed by Cardiac during the relevant time, just that they are all "former" officers and directors or held the relevant positions "at certain points in time between 2010 and the present." (*Id.* at ¶¶ 1, 5–8, 17.) These allegations aren't enough.

Structural changes, along with more precise factual allegations, may well solve this issue. As the complaint now stands, Plaintiff pleads only one breach of fiduciary duty claim against four distinct people covering three distinct categories of misconduct, alleging that all Defendants are responsible for all misconduct under two different types of fiduciary duties. But basic facts are yet unclear, like what positions the Defendants held when, and how they violated the duties of those positions. "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to plaintiff's allegations. They are unacceptable." *Sollberger v. Wachovia Secs., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). As a result, the Court cannot sift through the complaint to match the alleged wrongdoings to plausible claims for relief against each Defendant. *See Twombly*, 550 U.S. at 570. For this reason alone dismissal is appropriate.

### 4.2 Duties of Loyalty and Care

All that said, the Court nonetheless addresses Defendants' other arguments for dismissing Plaintiff's fiduciary duty claim subject to the concerns previously discussed. Plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-00993 AG (JCGx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | MICHAEL POLSKY v. VINOD RAMNANI ET AL. | | |

fiduciary duty claim is based on two theories: breach of the duty of loyalty and breach of the duty of care. Beyond their group pleading argument, Defendants argue that the complaint should be dismissed because Plaintiff failed to "plead around" the business judgment rule.

The parties agree that Delaware law applies. (Mot., Dkt. No. 10; Opp'n, Dkt. No. 41 at 3 fn1.) Under Delaware law, the business judgment rule provides that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (internal citations omitted), overruled on other grounds by *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000). "To rebut the presumptive applicability of the business judgment rule, a . . . plaintiff has the burden of proving that the board of directors, in reaching its challenged decision, violated any one of its triad of fiduciary duties: due care, loyalty, or good faith." *Emerald Partners v. Berlin*, 787 A.2d 85, 91 (Del. 2001). "The business judgment rule is only a presumption, which can be rebutted at the pleading stage by alleging facts showing a breach of duty of care or loyalty or acts in bad faith. *Skorheim v. Flanders*, No. SACV 10-0789 AG (MLGx), 2011 WL 13175962, at *8 (C.D. Cal. 2011) (internal citations omitted).

As for breach of the duty of loyalty, the duty "mandates that the best interest of the corporation . . . takes precedence over any interest possessed by a director [or] officer." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). "Classic examples of director self-interest in a business transaction involve either a director appearing on both sides of a transaction or a director receiving personal benefit from a transaction." *Id.* at 362. As the Supreme Court of Delaware has explained, "We have generally defined a director as being independent only when the director's decision is based *entirely on the corporate merits* of the transaction and is not influenced by personal or extraneous considerations." *Id.* (emphasis added). To show a violation of the breach of a duty of care, a plaintiff must show that those owing the duty acted with gross negligence. *See Brehm*, 746 A.2d at 258–59; *see also* Balotti & Finkelstein, Del. L. of Corp. & Bus. Orgg., § 4.15 (3d ed. 2018) ("Traditionally, the standard of care for directors was embodied in the statement that 'directors of a corporation in managing the corporate affairs are bound to use that amount of care which ordinarily careful and prudent men would use in similar circumstances,' but the courts have now settled on gross negligence as the standard in the decision-making context.").

#### 4.2.1 Intercorporate Transfers

Plaintiff's breach of fiduciary duty claim is based on multiple different transactions, so the Court addresses the transactions separately, looking first at the intercorporate transfers.

Plaintiff alleges Defendants violated their fiduciary duties by "improperly transferring tens of millions of dollars to other related companies without any legitimate business justification." (Am. Compl., Dkt. No. 28 at 2.) Plaintiff alleges that many of "Opto's officers and directors held similar positions within Cardiac Science, including Ramnani, Jayesh Patel and Dietiker" and that all the Defendants "caused Cardiac Science to make numerous transfers to or for the benefit of Opto for inadequate consideration, or for other reasons not in the best interest of Cardiac Science." (Am. Compl., Dkt. No. 28 at ¶ 52.) Plaintiff makes similar allegations concerning transfers to other Opto-owned companies. (*Id.* at ¶ 58.) In these transfers, Ramnani, Jayesh Patel and Dietiker were on both sides of the transfer, which is a "classic" duty of loyalty issue. *Cede*, 634 A.2d at 361. Assuming clarification of the roles of each Defendant, as discussed, Plaintiff sufficiently states a claim for breach of the duty of loyalty as to the Opto transfers. As for the transfers to entities wholly owned by Cardiac itself, there are no allegations that Ramnani, Dietiker, and Jayesh Patel were also board members or officers of the Cardiac subsidiaries, and there's no other allegation of self dealing. So Plaintiff hasn't stated a claim for a breach of the duty of loyalty on those transfers.

This raises the issue of the breach of the duty of care, which might apply to all the intercorporate transfers. But no facts in the complaint plausibly suggest Defendants acted with "gross negligence" in the transfers. *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005). Plaintiff doesn't even conclusorily state that anyone acted with gross negligence. As a result, Plaintiff hasn't sufficiently stated a claim for breach of the duty of care concerning the intercorporate transfers.

As for Nishita Patel, it's unclear what role, if any, she played in the intercorporate transfers, or whether she had fiduciary duties similar to the other Defendants. She isn't alleged to have been a board member or officer, or to have personally participated in any of the transfers. Without more clarifying facts, the Court can't decide at this time what duties Nishita Patel may or may not have owed as a vice president and general counsel and whether she's

plausibly alleged to have violated those duties. Put simply, Plaintiff fails to state a claim against Nishita Patel for breach of fiduciary duty concerning the intercorporate transfers.

#### 4.2.2 Favorable Compensation and Payment of Personal Expenses.

The other set of transactions underlying Plaintiff's fiduciary duty claim are the favorable compensation changes and payment of personal expenses. Defendants argue that Plaintiff fails to state a claim based on these transactions.

Plaintiff alleges that Defendant Nishita Patel "circulated draft change in control agreements to Ramnani, Dietiker, Jayesh Patel," and another Cardiac board member. (Am. Compl., Dkt. No. 28 at ¶ 74.) Plaintiff also alleges that "Cardiac Science purportedly entered into certain change in control bonus agreements with Ramnani, Dietiker, and Jayesh Patel" granting them over $10 million if any change in control occurred. (*Id.* at ¶ 75–77.) The amended complaint says Defendants "prepared and executed the backdated Change in Control Agreements and Change in Control Resolution . . . at a time when Cardiac Science was already insolvent." (*Id.* at ¶ 81.) The amended complaint also alleges that Defendants "caused Cardiac Science to pay excessive fringe benefits and expenses for the benefit of themselves and non-employees at a time when Cardiac Science was insolvent and struggling to pay its creditors." (*Id.* at 93.) These benefits included "automobile leases, standing hotel charges, rent, personal vacation charges, and other travel expenses." (*Id.* at 94.)

Assuming clarification of the roles each Defendant played in these transactions, these allegations are sufficient to support a claim for breach of the duty of loyalty, but do not implicate "gross negligence" issues considered in a duty of care analysis. In making the alleged corporate changes and paying the alleged personal expenses, Defendants put their own interests before the interests of the company. *Cede*, 634 A.2d at 361.

### 4.3 Leave to Amend

If a court dismisses certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts,'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-00993 AG (JCGx) | Date | March 26, 2018 |
| Title | MICHAEL POLSKY v. VINOD RAMNANI ET AL. | | |

*Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)), or "if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citation omitted). Considering these factors, leave to amend is appropriate. It's possible that Plaintiff could cure the defects discussed previously with additional, clarifying facts.

## 5. DISPOSITION

The Court DENIES Defendants' motion to transfer. (Dkt. No. 39.) The Court GRANTS Defendants' motion to dismiss with leave to amend. (Dkt. No. 38.) The Court ORDERS Plaintiff to file his second amended complaint, if any, by **April 16, 2018**.

: 0

Initials of Preparer lmb